# EXHIBIT B

# EXHIBIT B

# INTELLECTUAL PROPERTY AGREEMENT

THIS INTELLECTUAL PROPERTY AGREEMENT is made, entered and effective as of May 4, 2015 ("EFFECTIVE DATE"), by and between THE CURATORS OF THE UNIVERSITY OF MISSOURI, a public corporation of the State of Missouri having a principal office at the University of Missouri College of Education, 306 Clark Hall, Columbia, MO 65211, ("UNIVERSITY") and HIGH SCHOOL SERVIÇOS EDUCACIONAIS LTDA, an education service provider within the Federative Republic of Brazil at Rua do Vintém, 60, Centro, Vitória - ES, CEP 29015-380, registered with CNPJ 10.479.375/0001-30 ("HSE"). UNIVERSITY and HSE may sometimes be referred to herein as a "PARTY" or "PARTIES" as the case may be.

WHEREAS, UNIVERSITY and HSE entered into a Memorandum of Understanding and License Agreement on May 4, 2015 regarding a collaboration to leverage UNIVERSITY course content, teacher expertise, and administration of exams with HSE's partner schools' face-to-face support to address educational needs in Brazil ("MOU");

WHEREAS, pursuant to the MOU, UNIVERSITY and HSE have authored and will continue to author certain CURRICULUM as defined herein;

WHEREAS, the UNIVERSITY and HSE are desirous of further memorializing their rights in any intellectual property in the CURRICULUM and other materials developed pursuant to the MOU;

NOW, THEREFORE, in consideration of the foregoing premises and the covenants, representations and warranties contained herein, the PARTIES agree as follows:

## Article I. DEFINITIONS

Section 1.01 "BACKGROUND IP" means the INTELLECTUAL PROPERTY first developed by a PARTY prior to or otherwise outside of the collaboration set forth in the MOU.

Section 1.02 "ADVERTISING MATERIAL" means the promotional, advertising, or similar material (in both written and electronic form) generated during the PROJECT for the sole benefit of the PROJECT, including the website available at http://hseducacional.com.br/site/ and any subdomains therein, including both secure and unsecure portions.

Section 1.03 "BRAZILIAN TERRITORY" means the country of Brazil and one school in Paraguay, namely Colégio Anglo-Americano Paraguay.

Section 1.04 "COPYRIGHTS" means the copyrights under the United States Copyright Act of 1976 as amended from time to time, and International Treaty provisions, in effect from time to time, relating to the protection of copyrights worldwide, but excluding any third party rights therein.

Section 1.05 "COMMERCIALLY EXPLOIT" means to make, use, sell, offer for sale, reproduce, market, distribute, publicly display, publicly perform, or create DERIVATIVE WORKS.

Section 1.06 "CURRICULUM" means the curriculum developed by the PARTIES under the PROJECT and which is specified in Appendix A, which may be amended by mutual written

1

agreement between the PARTIES from time to time. For clarity, the CURRICULUM excludes the CURRICULUM DELIVERY INFRASTRUCTURE and the ADVERTISING MATERIAL.

Section 1.07 "CURRICULUM DELIVERY INFRASTRUCTURE" means the infrastructure that may be used by UNIVERSITY to deliver and teach the CURRICULUM, including but not limited to Canvas, Blackboard, Moodle, and Sakai.

Section 1.08 "DERIVATIVE WORK" means all works that would be characterized as a derivative work, in whole or in part, under the United States Copyright Act of 1976 as amended from time to time, specifically including, but not limited to, translations, abridgments, condensations, recastings, transformations, or adaptations of the works comprising editorial revisions, annotations, elaborations, or other modifications. For example, an "HSE CURRICULUM DERIVATIVE WORK" is a DERIVATIVE WORK developed, authored, or created by HSE PERSONNEL based on the CURRICULUM. Likewise, a "UNIVERSITY CURRICULUM DERIVATIVE WORK" is a DERIVATIVE WORK developed, authored, or created by UNIVERSITY PERSONNEL based on the CURRICULUM.

Section 1.09 "INTELLECTUAL PROPERTY" or "IP" means, without, limitation, all intellectual property rights in the United States, Brazil, or any other foreign country, including all patents, trademarks, trade names, COPYRIGHTS, and trade secrets, relating to any writings, works of authorship, ideas, designs, concepts, techniques, inventions, discoveries, specifications, equipment, technical information, schematics, diagrams, hardware, control systems, research, test results, manuals, improvements, systems, processes, methods, algorithms, computer programs (including both object code, source code, firmware and the like), databases, sound, video, HTML files, Java files, animations, scripts, documentation, media, tangible works of authorship, logos, names, slogans, marks, and graphic depictions.

Section 1.10 "NON-BRAZILIAN TERRITORY" means all countries in the world except the BRAZILIAN TERRITORY.

Section 1.11 "PERSONNEL" means a PARTY's directors, officers, curators, employees, consultants, and independent contractors.

Section 1.12 "PROJECT" means the joint development collaboration undertaken by the PARTIES pursuant to the MOU in the BRAZILIAN TERRITORY.

Section 1.13 "PROJECT IP" means all INTELLECTUAL PROPERTY first developed by a PARTY or that PARTY's PERSONNEL during the course of the PROJECT but excludes any BACKGROUND IP. "UNIVERSITY PROJECT IP" means the INTELLECTUAL PROPERTY first developed solely by UNIVERSITY PERSONNEL during the course of the PROJECT. "HSE PROJECT IP" means the INTELLECTUAL PROPERTY first developed solely by HSE PERSONNEL during the course of the PROJECT. "UNIVERSITY/HSE JOINT PROJECT IP" means the INTELLECTUAL PROPERTY first developed jointly by UNIVERSITY PERSONNEL and HSE PERSONNEL during the course of the PROJECT. By way of example, the COPYRIGHTS in the CURRICULUM authored jointly by UNIVERSITY PERSONNEL and HSE PERSONNEL shall constitute UNIVERSITY/HSE JOINT PROJECT IP.

Section 1.14 "THIRD PARTY IP" means INTELLECTUAL PROPERTY owned or controlled by third parties.

Case 2:19-cv-04083-BCW   Document 1-3   Filed 04/24/19   Page 3 of 14

Section 1.15  "TRADEMARKS" means the UNIVERSITY's trademarks and service marks as defined in Section 2.01(d)(ii)

### Article II. INTELLECTUAL PROPERTY

Section 2.01  Rights in Background IP.

(a) Ownership of Background IP. Each PARTY acknowledges and agrees that, as between the PARTIES, each PARTY is and shall remain the sole and exclusive owner of all right, title, and interest in and to its BACKGROUND IP, and that this AGREEMENT does not affect such ownership. Each PARTY acknowledges that it acquires no right under this AGREEMENT to the other PARTY's BACKGROUND IP other than as specifically granted in this AGREEMENT.

(b) License to University for HSE Background IP. HSE grants to UNIVERSITY, and UNIVERSITY hereby accepts a non-exclusive, paid-up, royalty-free right and license under any HSE BACKGROUND IP to:

   (i) perform UNIVERSITY's activities under the MOU in the BRAZILIAN TERRITORY during the term of the MOU; and

   (ii) prepare UNIVERSITY CURRICULUM DERIVATIVE WORKS based solely on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and to COMMERCIALLY EXPLOIT such UNIVERSITY CURRICULUM DERIVATIVE WORKS -- only to the extent that the HSE BACKGROUND IP is used or incorporated into the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM -- perpetually in the NON-BRAZILIAN TERRITORY.

   For clarity, the license set forth in Section 2.01(b)(ii) shall not apply to ADVERTISING MATERIAL or CURRICULUM DELIVERY INFRASTRUCTURE. The PARTIES rights in the ADVERTISING MATERIAL shall be governed by Section 2.02(d)(vi).

(c) License to HSE for University Background IP. UNIVERSITY grants to HSE, and HSE hereby accepts a non-exclusive, paid-up, royalty-free right and license under any UNIVERSITY BACKGROUND IP (except the TRADEMARKS) to:

   (i) perform HSE's activities under the MOU in the BRAZILIAN TERRITORY during the term of the MOU;

   (ii) prepare HSE CURRICULUM DERIVATIVE WORKS based solely on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and to COMMERCIALLY EXPLOIT such HSE CURRICULUM DERIVATIVE WORKS -- only to the extent that the UNIVERSITY BACKGROUND IP is used or incorporated into the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM -- perpetually in the NON-BRAZILIAN TERRITORY.

   For clarity, the license set forth in Section 2.02(c)(ii) shall not apply to ADVERTISING MATERIAL or CURRICULUM DELIVERY

INFRASTRUCTURE. The PARTIES rights in the ADVERTISING MATERIAL shall be governed by Section 2.02(d)(vi).

For clarity, the license set forth in Section 2.01(c)(i) and Section 2.01(c)(ii) shall not apply to the TRADEMARKS, which are governed by Section 2.01(d) below,

(d) <u>License to University Trademarks.</u>

  (i) This Section 2.01(d) supersedes and replaces Article IV of the MOU in its entirety.

  (ii) "TRADEMARKS" means the trademarks, service marks, and other indicia owned by UNIVERSITY and set forth in Appendix B as amended by mutual written agreement between the PARTIES from time to time.

  (iii) As of the EFFECTIVE DATE, UNIVERSITY hereby grants HSE a limited, non-transferable, non-sublicensable, non-exclusive revocable license to use the UNIVERSITY's TRADEMARKS only for use on materials to promote the UNIVERSITY's and HSE's collaboration in education as set forth in the MOU. No rights are granted to HSE in the NON-BRAZILIAN TERRITORY or outside of the collaboration in education set forth in the MOU.

  (iv) HSE agrees that at all times, it has used, and will only use, the TRADEMARKS in the form and manner prescribed and pre-approved in writing by UNIVERSITY. HSE agrees to cooperate with UNIVERSITY in facilitating UNIVERSITY's control over the use of the TRADEMARKS. HSE will supply UNIVERSITY with specimens of all uses of the TRADEMARKS upon request.

  (v) Upon completion of the PROJECT or termination or expiration of the MOU, HSE shall immediately cease use of the UNIVERSITY's TRADEMARKS and any term confusingly similar thereto, and to return all materials bearing the TRADEMARKS in HSE's possession or control to UNIVERSITY.

  (vi) If HSE desires to use the TRADEMARKS on any additional items or advertising bearing the marks of the UNIVERSITY, HSE must obtain a new license from the Licensing and Trademark Office of UNIVERSITY.

  (vii) HSE recognizes the great value and goodwill associated with the TRADEMARKS and acknowledges that UNIVERSITY owns all right, title, and interest in and to the TRADEMARKS. Nothing herein shall give HSE any right, title, or interest in the TRADEMARKS or any other indicia of the UNIVERSITY except the limited interest specifically stated in this AGREEMENT. All benefit of any use of the TRADEMARKS has inured and shall continue to inure to the benefit of UNIVERSITY. HSE agrees to execute any documents or other instruments necessary to perfect UNIVERSITY's rights in the TRADEMARKS.

  (viii) HSE shall promptly inform UNIVERSITY in writing of any alleged infringement by a third party of the TRADEMARKS. UNIVERSITY shall have the sole right and discretion, but not obligation, to bring any infringement or unfair competition proceedings involving the TRADEMARKS. HSE shall fully cooperate with

UNIVERSITY in any such action upon request from UNIVERSITY. HSE further agrees that it has not or will not do anything inconsistent with UNIVERSITY's ownership of the TRADEMARKS.

Section 2.02   Rights in Project IP.

(a) Ownership of Project IP. Ownership of PROJECT IP shall be determined in accordance with the default principles of U.S. law, subject to any written agreement among the PARTIES regarding a different allocation of rights. Thus, as between the PARTIES:

   (i) UNIVERSITY PROJECT IP shall be solely owned by UNIVERSITY.

   (ii) HSE PROJECT IP shall be solely owned by HSE.

   (iii) UNIVERSITY/HSE JOINT PROJECT IP shall be jointly owned by UNIVERSITY and HSE. The PARTIES agree that the CURRICULUM is UNIVERSITY/HSE JOINT PROJECT IP.

(b) License to University for HSE Project IP. HSE grants to UNIVERSITY, and UNIVERSITY hereby accepts a non-exclusive, paid-up, royalty-free right and license under any HSE PROJECT IP to:

   (i) perform UNIVERSITY's activities under the MOU in the BRAZILIAN TERRITORY during the term of the MOU; and

   (ii) prepare UNIVERSITY CURRICULUM DERIVATIVE WORKS based solely on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and to COMMERCIALLY EXPLOIT such UNIVERSITY CURRICULUM DERIVATIVE WORKS -- only to the extent that the HSE PROJECT IP is used or incorporated into the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM -- perpetually in the NON-BRAZILIAN TERRITORY.
   For clarity, the license set forth in Section 2.02(b)(ii) shall not apply to ADVERTISING MATERIAL or CURRICULUM DELIVERY INFRASTRUCTURE. The PARTIES rights in the ADVERTISING MATERIAL shall be governed by Section 2.02(d)(vi).

(c) License to HSE for University Project IP. Subject to the terms and conditions of this AGREEMENT and the MOU, UNIVERSITY grants to HSE, and HSE hereby accepts a non-exclusive, paid-up, royalty-free right and license under the UNIVERSITY PROJECT IP to:

   (i) perform HSE's activities under the MOU in the BRAZILIAN TERRITORY during the term of the MOU;

   (ii) prepare HSE CURRICULUM DERIVATIVE WORKS based solely on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and to COMMERCIALLY EXPLOIT the HSE CURRICULUM DERIVATIVE WORKS -- only to the extent that the UNIVERSITY PROJECT IP is used or incorporated

5

into the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM – perpetually in the NON-BRAZILIAN TERRITORY.

For clarity, the license set forth in Section 2.02(c)(ii) shall not apply to ADVERTISING MATERIAL or CURRICULUM DELIVERY INFRASTRUCTURE. The PARTIES rights in the ADVERTISING MATERIAL shall be governed by Section 2.02(d)(vi).

(d) Rights in University/HSE Joint Project IP.

   (i) *In Brazil.* Each PARTY agrees that it will COMMERCIALLY EXPLOIT the UNIVERSITY/HSE JOINT PROJECT IP in the BRAZILIAN TERRITORY only to perform each PARTY's activities under the MOU during the term of the MOU.

   (ii) *Outside of Brazil.*

   1) UNIVERSITY shall have the right to prepare UNIVERSITY CURRICULUM DERIVATIVE WORKS based on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and COMMERCIALLY EXPLOIT the UNIVERSITY CURRICULUM DERIVATIVE WORKS perpetually only in the NON-BRAZILIAN TERRITORY without any duty to account to HSE.

   2) HSE shall have the right to prepare HSE CURRICULUM DERIVATIVE WORKS based on the UNIVERSITY/HSE JOINT PROJECT IP in the CURRICULUM and COMMERCIALLY EXPLOIT the HSE CURRICULUM DERIVATIVE WORKS perpetually only in the NON-BRAZILIAN TERRITORY without any duty to account to the UNIVERSITY.

   (iii) *Copyright Filings in University/HSE Joint Project IP.* UNIVERSITY shall have the first right, but not the obligation, to file and maintain copyright applications and registered copyrights included in the UNIVERSITY/HSE JOINT PROJECT IP in the name of both HSE and UNIVERSITY. UNIVERSITY shall first consult with HSE as to the preparation, filing, prosecution, and maintenance of such copyright applications and shall furnish to HSE copies of documents relevant to any such preparation, filing, prosecution or maintenance, upon request.

   (iv) *Notifications.* Each PARTY shall promptly inform the other PARTY in writing of any alleged infringement or misappropriation by a third party of the UNIVERSITY/HSE JOINT PROJECT IP, and shall provide UNIVERSITY with any available evidence thereof. Each PARTY shall not notify a third party of such infringement or misappropriation without the written consent of the other PARTY, such consent not to be unreasonably withheld or delayed.

   (v) *Enforcement of University/HSE Joint Project IP.* The PARTIES agree to discuss resolution or the abatement of possible infringement or misappropriation of the UNIVERSITY/HSE JOINT PROJECT IP, taking into account the potential effects such legal proceeding may have on the public interest. Either PARTY may be free to enter into a settlement, consent judgment, or other voluntary disposition with respect to any such UNIVERSITY/HSE JOINT IP in accordance with applicable

law, provided that any settlement, consent judgment or other voluntary disposition thereof which (i) materially limits the scope, validity, or enforceability UNIVERSITY/HSE JOINT PROJECT IP or (ii) admits or suggests fault or wrongdoing on the part of UNIVERSITY must be pre-approved in writing by UNIVERSITY.

(vi) *Rights in Advertising Material.* Except in connection with the collaboration in education as set forth in the MOU, neither PARTY shall have the right to use, reproduce, distribute, or create DERIVATIVE WORKS in the ADVERTISING MATERIAL without the written consent of the other PARTY. Notwithstanding the foregoing, the PARTIES agree to discuss in good faith requests for such consent or conditioned consent by the other PARTY.

Section 2.03  Scope. The licenses granted in this Article II shall not be construed to confer any rights upon HSE or UNIVERSITY by implication, estoppel or otherwise not specifically herein.

### Article III. WARRANTIES AND INDEMNITY

Section 3.01  Representations and Warranties by HSE. HSE represents and warrants that:

(a) HSE is a corporation duly organized, validly existing, and in good standing under the laws of its state of incorporation and has all requisite corporate power and authority to enter into this AGREEMENT;

(b) The execution, delivery and performance by HSE of this AGREEMENT and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite action on the part of HSE and do not conflict with or cause a default with respect to HSE's obligations under any other agreement;

(c) HSE has and will provide written notice to the UNIVERSITY of all THIRD PARTY IP that HSE has or will incorporate or otherwise use in the HSE BACKGROUND IP, the HSE PROJECT IP, and any contributions that HSE PERSONNEL has made or will make to the UNIVERSITY/HSE JOINT PROJECT IP ("HSE THIRD PARTY IP");

(d) Except for the HSE THIRD PARTY IP,

(i) all HSE PERSONNEL are legally obligated to assign or have assigned to HSE (a) the HSE BACKGROUND IP used or incorporated into the PROJECT IP, (b) HSE PROJECT IP and (c) any contributions HSE has made to the UNIVERSITY/HSE JOINT PROJECT IP; and

(ii) the HSE BACKGROUND IP used or incorporated into the PROJECT IP, the HSE PROJECT IP and any contributions HSE has made to the UNIVERSITY/HSE JOINT PROJECT IP are and will be the original creation of the HSE PERSONNEL and such contributions are and will not be based on, nor do they incorporate, any preexisting work of third parties.

(e) the HSE BACKGROUND IP used or incorporated into the PROJECT IP, the HSE PROJECT IP and any contributions HSE has made to the UNIVERSITY/HSE JOINT

7

PROJECT IP do not and will not infringe any copyright, violate any property rights, or contain any defamatory, abusive, libelous, unlawful, obscene, threatening, harassing, abusive, offensive, libelous, defamatory, slanderous, immoral, fraudulent, pornographic, indecent, obscene, fraudulent, discriminatory, infringing, hateful, harmful, spam, or that could encourage criminal or unethical material; and

(f) Neither HSE nor any of the HSE PERSONNEL have granted, or purported to grant, any licenses or other rights in the UNIVERSITY/HSE JOINT PROJECT IP to any third parties.

Section 3.02 Representations and Warranties by University. UNIVERSITY makes no representation or warranty that the THIRD PARTY IP may be used by HSE outside of the PROJECT or in the NON-BRAZILIAN TERRITORY. HSE is solely responsible for obtaining any third party licenses, consents, or other permissions for HSE to use any THIRD PARTY IP that is used or incorporated into the CURRICULUM (or any HSE CURRICULUM DERIVATIVE WORKS) in the NON-BRAZILIAN TERRITORY.

Section 3.03 Indemnity. HSE shall at all times during the term of this AGREEMENT and thereafter, indemnify, defend and hold UNIVERSITY, its current or former Curators, officers, employees and affiliates, harmless from any claim, proceeding, suit, demand, expense, loss, penalty, judgment, or liability of any kind whatsoever, including costs, expenses and reasonable attorneys' fees, resulting from, related to, arising out of, or in connection with (1) use of the TRADEMARKS pursuant to this this AGREEMENT; (2) any infringement or misappropriation of any THIRD PARTY IP; (3) any breach of any obligation, covenant, representation, or warranty by HSE under this AGREEMENT or the MOU; or (4) a breach or violation of applicable law by HSE or HSE PERSONNEL; or (5) the exercise of HSE's rights under this AGREEMENT. If any such claims or causes of action are made, UNIVERSITY shall be defended by counsel selected by HSE, subject to UNIVERSITY's approval. UNIVERSITY reserves the right to be represented by its own counsel at its own expense.

## Article IV. TERM AND TERMINATION

Section 4.01 Term. This AGREEMENT shall become effective upon the EFFECTIVE DATE and, unless sooner terminated in accordance with any of the provisions herein, shall remain in full force until June 30, 2020 with automatic annual renewals of one (1) year terms.

Section 4.02 Right to Terminate by Either Party. This AGREEMENT may be terminated by either PARTY with one (1) year written notice to the other PARTY, with such notice being given by June 30th and the termination of the AGREEMENT will occur one (1) year later.

Section 4.03 Breach. In the event that either PARTY defaults or breaches any of the provisions of this AGREEMENT, the other PARTY shall have the right to terminate this AGREEMENT by giving written notice to the defaulting PARTY; provided, however, that if the defaulting PARTY cures the default within thirty (30) days after the notice shall have been given, this AGREEMENT shall continue in full force and effect. The failure on the part of either of the PARTIES hereto to exercise or enforce any right conferred upon it hereunder shall not be deemed to be a waiver of any such right nor operate to bar the exercise or enforcement thereof at any time or times thereafter.

Section 4.04  Insolvency. In the event that HSE dissolves, liquidates, ceases to carry on business, becomes insolvent, is unable to pay its debts as they become due, makes an assignment for the benefit of creditors, or has a petition for bankruptcy filed for or against it, this AGREEMENT shall automatically terminate.

Section 4.05  Survival. Termination of this AGREEMENT for any reason shall not release either PARTY from any obligation theretofore accrued. All provisions of this AGREEMENT that would reasonably be expected to survive the termination or expiration of this AGREEMENT shall do so, including Section 2.01(b)(ii) (License to University for HSE Background IP), Section 2.01(c)(ii) (License to HSE for University Background IP), Section 2.02(b)(ii) (License to University for HSE Project IP), Section 2.02(c)(ii) (License to HSE for University Project IP), Section 2.02(d)(ii) (Rights in University/HSE Joint Project IP), Section 2.02(d)(iii) (Copyright Filings in University/HSE Joint Project IP), Section 2.02(d)(iv) (Notifications), Section 2.02(d)(v) (Enforcement of University/HSE Joint Project IP), Article III (Warranties and Indemnity – all), Article V (General – all) survive the termination of this AGREEMENT.

## Article V. GENERAL

Section 5.01  Marking. HSE shall mark (1) the ADVERTISING MATERIALS and (2) other copyrightable works within UNIVERSITY/HSE JOINT PROJECT IP as directed by UNIVERSITY with copyright notices in accordance with 17 U.S.C. § 401 or in such a manner as to conform with the copyright laws and practice of the country of distribution. UNIVERSITY's copyright ownership interest shall be identified as "© Copyright (year) by The Curators of the University of Missouri, a public corporation."

Section 5.02  Assignment. This AGREEMENT is binding upon and shall inure to the benefit of UNIVERSITY, its successors and assigns. Notwithstanding the foregoing, this AGREEMENT is not assignable by either PARTY without the prior written consent of the other PARTY, which consent will not be unreasonably withheld or delayed.

Section 5.03  Notices. Any payment, notice, or other communication given under this AGREEMENT shall be in writing and shall be deemed delivered when sent by certified first class mail, registered mail, or overnight courier, email addressed to the PARTIES as follows (or at such other addresses as the PARTIES may notify each other in writing):

If to UNIVERSITY:
Director, Mizzou K-12 Online
Zachary March
marchz@missouri.edu

With a copy to
Director III, Business Administration
Lisa Wimmenauer
wimmenauerl@missouri.edu
and
Chris Fender,
Director, Office of Technology Management and Industry Relations
fenderc@missouri.edu

9

If to HSE:
National Coordinator
Rogério Abaurre
rogerio.abaurre@hseducacional.com

Section 5.04    No Other Relationship.  In assuming and performing the respective obligations under this AGREEMENT, HSE and UNIVERSITY are each acting as independent parties and neither shall be considered, or represent itself, as a joint venture, partner, agent or employee of the other.

Section 5.05    No Waiver.  None of the terms, covenants, and conditions of this AGREEMENT can be waived except by the written consent of the PARTY waiving compliance.  A failure by one of the PARTIES to this AGREEMENT to assert its rights for or upon any breach or default of this AGREEMENT shall not be deemed a waiver of such rights nor shall any such waiver be implied from acceptance of any payment.  No such failure or waiver in writing by any one of the PARTIES hereto with respect to any rights, shall extend to or affect any subsequent breach or impair any right consequent thereon.

Section 5.06    Severability.  If any sentence, paragraph, clause or combination of the same is found by a court of competent jurisdiction to be in violation of any applicable law or regulation, or is unenforceable or void for any reason whatsoever, such sentence, paragraph, clause or combinations of the same shall be severed from the AGREEMENT and the remainder of the AGREEMENT shall remain binding upon the PARTIES.

Section 5.07    Headings.  The headings of the paragraphs of this AGREEMENT are inserted for convenience only and shall not constitute a part hereof.

Section 5.08    Choice of Law and Venue.  This AGREEMENT shall be construed, interpreted, and applied in accordance with the laws of the United States of America and the State of Missouri.  Any action to enforce the provisions of the AGREEMENT shall be brought in a court of competent jurisdiction and proper venue in the State of Missouri.  HSE irrevocably submits to the jurisdiction of such courts in any such action or proceeding.  HSE further irrevocably and unconditionally waives any objection to the laying of venue of any suit, action or proceeding in such courts and irrevocably waives and agrees not to plead or claim in any court that such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

Section 5.09    Sovereign Immunity.  The PARTIES agree that nothing in this AGREEMENT is intended or shall be construed as a waiver, either express or implied, of any of the immunities, rights, benefits, defenses or protections provided to UNIVERSITY under governmental or sovereign immunity laws from time to time applicable to UNIVERSITY.

Section 5.10    Counterparts.  This AGREEMENT may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

Section 5.11    Entire Agreement.  This AGREEMENT, together with the MOU, constitutes the entire and only agreement between the PARTIES for subject matter hereof and all other prior negotiations, representations, agreements, and understandings are superseded hereby.  No

agreements altering or supplementing the terms hereof may be made except by a written document signed by both PARTIES.

IN WITNESS WHEREOF, the PARTIES hereto have executed this AGREEMENT in duplicate originals by their duly authorized officers or representatives.

| THE CURATORS OF THE UNIVERSITY OF MISSOURI | HIGH SCHOOL SERVIÇOS EDUCACIONAIS LTDA |
|---|---|
| BY: *(signature)* | BY: *(signature)* |
| NAME: Chris Fender | NAME: Rogério da Cunha Abaurre Filho |
| TITLE: Director, Office of Technology Management and Industry Relations | TITLE: HSE National Coordinator |
| DATE March 10, 2016 | DATE April 22, 2016 |

# APPENDIX A: CURRICULUM

English 9A

English 9B

English 10Av1

English 10Av2

English 10B

Writing for the Critical Thinker

U.S. History I

U.S. History II

U.S. Government

Speech I

Speech II

Debate

Economics

Marketing

Health

College Prep

Career Development

# APPENDIX B: TRADEMARKS

**(1)** MU Stacked Logo:



**(2)** UNIVERSITY OF MISSOURI HIGH SCHOOL<sup>SM</sup>



**(3)** the photos or other indicia depicting the UNIVERSITY's columns or buildings



**(4)** MU Tiger Head Spirit Mark:



13